Good morning, Mr. Tucker. Good morning. May it please the Court, I'm Jerome Tucker and I represent the Anchrums who are the appellants in this case. And cutting to the chase, we have maintained throughout the course of this process that the contract mortgage, promissory note and mortgage requires two letters, default letter and a letter of intent to accelerate the loan. The Alabama Supreme Court has decided on two occasions, most recently I think in 2017, that there is strict compliance, not substantial performance. We did what we could and then we get a chance to eject these people. And because of those things, we're in Frederick and Wells Fargo did not strictly comply with the terms and conditions of the mortgage. The plaintiffs have maintained and we say it's still a law that their foreclosure is void. That being the case, we never reach the other parts of this, but I'll go ahead and talk about it anyway. When I say the other parts, what we're talking about, the Court granted a summary judgment on the appellant's claim for breach of contract. And we say that that is not proper for two reasons. One, the two reasons why you have summary judgment and why you have to eliminate all of the possible material facts or prove that there are no material facts. And second, you have to be entitled to a judgment as a matter of law. We said that they can't prove that they complied with the statute. And as a consequence, they're not entitled to a judgment as a matter of law with respect to that breach of contract claim where they failed to strictly comply with the mortgage and note. But let me just ask you a question. The ways that you are asserting they failed to strictly comply are that they failed to send the letters to the address specified in the mortgage and note. Is that right? Partially. Okay. They sent one note to the wrong address. The property address is listed in the note. And that's Alabaster, Alabama. They being Freddie Mac and its servicer, sent a letter to something in Moline, Alabama. And the property address listed in the note, it clearly sets out the address. It clearly sets out everything in regard to that. They didn't send the default there. And as a consequence of that default letter, and as a consequence of that, we didn't get that note. And we didn't have an opportunity to cure the defect. But let me ask you a question about that. Here's my concern. Under, and I'm sorry, I can't remember whether it's the mortgage or the note, but under one of the documents, it does specifically impose on your clients the obligation to promptly notify the, to promptly notify Freddie Mac of any changes in address. Would you agree? Yes, ma'am. I agree to that. And it says in the way that, I think it says in the way that Freddie Mac requires or whatever. But in any case, or that the, it might say that the note requires. But in any case, your client did do that by telephone, right? There is a telephone conversation. No. To be quite frank with you, no. What is the telephone conversation then? There was a telephone conversation about trying to get a mortgage refinanced. Well. My client never told them, and he's very specific about that, never told them, but it doesn't really matter what he told them on the phone, but never told them that this is not my address. In two separate conversations on March the 13th, 2011, and June the 20th, 2011, did your address and a mailing address, the Maylene address? That's an affidavit from Freddie Mac, and they say that he said, he said that this letter, whatever it is, may have gone to Maylene, which is the next town or so over from Alabaster, Alabama. But the note itself said that if the debtor. But is there any evidence that in some way contests this? You mean? The phone calls? It would still be, if it was a phone call, and even if we made a phone call, it would be contrary to the terms and conditions of the contract. Okay. But if the Maylene address is the proper, if the Alabaster address is the proper mailing under the terms of the agreements? In other words, my question to you goes to why is it not that the Ancrums breached the contract first by not correcting their address? I don't know how to prove that negative, but the Ancrum lived in the house, and they lived they got a letter to get out in 10 days. The house is in Alabaster, it's listed in the note, and quite frankly, the address is in here somewhere. But it's Alabaster, clearly, three, five, two, whatever the address is, it's listed in the note. The contract calls for all notices and all of everything from the lender to the Ancrums, the mail, not certified mail, but by regular mail, to the property address listed in the note. Can I ask you a question? You said this is the next town over, and I'm from Georgia, so please forgive my lack of understanding of Alabama and the various cities, but is Maylene a part of Alabaster? No, ma'am. Because, say, people can send things in Atlanta, but you can also be more specific, send it to Marietta, Georgia, either one works. Is this a situation where either one of those designations works? No, ma'am. No, ma'am. And we'll have to rely on the Alabama Supreme Court's judgment and strictly comply, you don't have to, but we have relied on that, saying that all notices go to the property address listed on the note and on the documents. There's also a property insurance disclosure form that was filled out, and that, I understand, lists the Maylene address, is that correct? That was the, I'm familiar with that document, that was a document filled out by the insurance agent, who submitted that at the time of the closing out of an uncertainty. On behalf of your clients? Well, maybe so, yes. But that, again, and I'm not arguing with you, but that's not the property address listed on the note, so that your agent can't bind you to a mistake that he made. The insurance agent's address, that's not in the record, for his office is, is in Maylene. But that doesn't make everybody in Alabaster be liable, because you sent letters to somewhere other than Alabaster, especially when the contract itself said, all notices must go to the proper address. More importantly, the Alabama Supreme Court stated on two occasions, the first in 2012 in Jackson v. Wells Fargo, that you must strictly comply with the terms and conditions of the mortgage and note. They revisited that issue in the case of Turner in 2017, where in theory was, we substantially complied. The Alabama Supreme Court again addressed that issue and said, substantial compliance is not the deal here in Alabama. You have to strictly comply with the mortgage and note, or what I say, and I probably shouldn't say this, but I just have to say it, I've said throughout this whole deal, that what's good for the goose is good for the gander. And if you have terms and conditions that are good for the mortgage company, they should  Thank you. You've reserved time for rebuttal. If you want to continue and... No, no, no. Okay. So you have five minutes, Mr. Tucker, for rebuttal. Thank you. Ms. Sipes. May I please support? My name is Jade Sipes, and I represent Freddie Mac and Wells Fargo, the Pellies in this case. This court should affirm the grant of summary judgment on the Ancrum's breach of contract claim and should affirm the award of damages assessed against Ancrum in this case. Let me ask you one question, somewhat collateral, but the Court of Attorneys seized Andrea. She didn't sign the note. How do you, what's the basis of the liability? Yes, Your Honor. That's true, she did not sign the note. However, she did sign the mortgage, and under paragraph 22 of the mortgage, it allows the lender, in this case, Wells Fargo, to receive reasonable fees incurred in pursuing rights to foreclose due to default, and at the trial of this matter, there was... Wait, what's the basis, is that the basis of the award, the language of the mortgage? Yes, Your Honor. The District Court did award attorney's fees based on the mortgage, and you can find that in the transcript at page 71. I believe the District Judge said note and mortgage, but the mortgage is certainly grounds to affirm... Both parties signed the mortgage, right? So they're both liable for attorney's fees under that, but what's the need for a second promissory note? Well, Your Honor, Mrs. Ancrum signed the mortgage. The mortgage provides fees. She's held to have to comply with that provision, so if the lender incurs fees in pursuing its rights to... The mortgage, I don't have the mortgage language in front of me, but does it, the word fees or does it say attorney's fees? I assume it does from your statement. Yes, Your Honor, and I can give you the exact language, and this is found on document 52-2 in the record. Yes, ma'am. It says, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this section 22, which is the power of sale to foreclose, including, but not limited to, reasonable attorney's fees and costs. Okay, good. Thank you. Now, one other factual question. What notice was given to these folks about removal of their property from the house? Your Honor, I believe you're asking about the notice that they need to vacate the property? I'm sorry, I'm sorry, I didn't understand you. There was, after the foreclosure, Freddie Mac, Freddie Mac's agent, posted a notice telling the Ancrums that they need to vacate the property within 10 days. Vacate the property? Then what property was left in the house? There was lots of personal property, and the testimony at the trial on damages... Help me a little bit with that. What's, you know, lots of personal property, I'm not sure, help me a little bit with that. Yes, Your Honor. So, the Ancrums, Mr. Ancrum was a former Birmingham police officer. His uniform was left, there's testimony that his uniforms were left in the house. There's a lawnmower left in the house. Freddie Mac's real estate agent testified at trial that, excuse me, it looked as though someone was coming and going from the property. Well, the same reason I asked the question, it's a lot rest on this notion that they were still in possession of the property. How much of the damage rest on that? Yes, Your Honor. So, the district court, after holding the trial, awarded fees and damages for wrongful possession. Right, I understand that. How much of that was triggered by the fact that they retained, they did not relinquish possession of it? Right, Your Honor. I believe the district court, in its order, separated out attorney's fees versus wrongful possession. I understand what the district court did, but my question is a factual question. Yes, so the, if I understand your question correctly, you're asking how much of the damages award against the Ancrums is based? What's the consequence of them leaving their goods in there, not? Yes, Your Honor. So, the consequence of that is that Freddie Mac could not obtain possession of the property. I understand that, but how does that translate to damages? So, the district judge imposed a reasonable rental value for each month that they were entitled to. And how much did that add up to? My recollection is that the total damages award was around $70,000 and $40,000 were  I could be wrong, Your Honor, so I think about $30,000. So, a substantial portion of the award was an assigned rental value because you could not obtain possession. That's correct, Your Honor. And you're, you know, the only notice, you put a notice up there, to what, what did the notice say? The notice said, you have 10 days to make it. And I want to make sure. 10 days to what? To make it, the property. And I couldn't. What does it say about removal, incidental removal possessions? There was a, I believe there was a second notice that says, you have, and I'm sorry my memory, it's either 10 or 15 days to remove your personal effects or there will be. My concern is that the mortgage company, the people, the people that moves, and people move and they leave things behind and maybe they can move and get a few things there. I've seen this in tenant cases before and frequently, you know, really abandoned and the landlord doesn't do anything about it. They just, they want to put the cost of, you know, they're not trying to rent the property themselves. They make no real effort to do so. They just rely on a notice, I suppose, and run the clock against them for an assigned rental value and end up with a substantial money reward. Now, I have seen that from time to time over the years and my question to you is, when I read this fact pattern is, does that bother me? If they, people seem to come and go and if they want the property and they want to rent it, it seems to me they ought to be doing something more than just posting a notice on the board and getting around to going to court and putting money damages on them for rental. If I were a landlord and that's my property and I wanted to rent it, I wouldn't just say, well, you know, they got some personal property, I'll just leave it. Well, your honor, so that's why Freddie Mac filed this ejectment action to make sure that the Ancrums were ejected from the property. They, Freddie Mac did not want to do a wrongful entrance, breach of the peace kind of thing and the testimony at trial showed that Mr. Ancrum went back to the property. He was mowing the lawn at that property and, you know, the district judge made these factual findings and I believe the senior review is that there has to be clear error to reverse the district court's factual findings on this. What did the district court find factually, which is what was left there? What specific property was left there? He found that the police uniforms were left there. Mr. Ancrum had mowed his lawn. The Freddie Mac real estate agent testified it looked as though people were coming and going and so I think the question for this court is whether there is a clear error in those factual findings such that the district court's award of damages for wrongful possession should be overturned and I don't think there's a clear error here based on the evidence that was presented at trial. Mr. Ancrum testified, Mrs. Ancrum testified, Freddie Mac's real estate agent testified and the court heard lots of testimony on whether the Ancrums vacated the property or not. But along those same lines, the notices that were posted, one of the notices said if you don't dispose of this property within, if you don't remove your property within 15 days, we will dispose of it and so sort of related to that question, I guess, what notice was there to the Ancrums that they might be liable for continued possession of the property beyond those 15 days if they read the notice and they thought, okay, that's fine, I don't care if they get rid of my property. Right, Your Honor. And that's true. There was this 15 day notice, however, Alabama law states that unless you clearly have vacated a property, you will be liable for damages for wrongful possession. And so it goes, I contend that it goes back to the factual finding of the district court whether or not the Ancrums vacated the property. And the testimony and evidence at the trial on damages in this matter, the district court found that the evidence was they hadn't vacated. So your position is it doesn't really matter that the notice said we're going to dispose of your property if you don't remove it in 15 days. And the fact that they left their property there doesn't somehow relieve them of any responsibility for having done so even though your notice said we're going to dispose of it. And theoretically, they could have thought, okay, that's fine, they're going to dispose of it. It doesn't matter because you view the factual findings of the district judge as having found that they were still living there. Well, and I think there's more than just leaving their personal property there. Mr. Ancrum would come back to the property and mow the lawn. That's not an action of someone who had vacated the property. And I think those factual findings support the court's decision that they did not vacate and support the award of wrongful possession damages. You mentioned breach of the peace. Was there any concern on the part of Freddie Mac that even with the notice, if there is still some indication of possession, that there could be some liability placed on Freddie Mac for entering the property and disposing of the property, of the personal property  Yes, Your Honor. And that's precisely why Alabama has this ejectment procedure. So that purchasers of property at foreclosure sales can get a court ruling that they are allowed to eject the previous owners from the property. That's exactly right, Your Honor. So relying on the notice. So how long did it, how long did it take them to get a court ruling that they could tattle the possession? Well, Your Honor, Freddie Mac filed an ejectment action and then the Ancrums filed a counterclaim raising a host of... How much time, when did they ask a court for possession of the property? Shortly after the foreclosure sale. But this lawsuit today is still that ejectment. The Ancrums brought counterclaims, case was removed, we litigated the ejectment claim and the counterclaims, and that's where we are today. So what would, for what is Freddie Mac's concern? You've posted the notice, you've said remove personal property or we'll dispose of it. It still looks like someone's living there. What is the potential legal liability that Freddie Mac is concerned about if Freddie Mac goes in pursuant to the notice? Sure. So if Freddie Mac enters into the property and they're still in there, the Ancrums quite possibly could have a trespass breach of the peace kind of claim against Freddie Mac for liability. So Freddie Mac took advantage of the ejectment action provided under Alabama law to... Was there not a court order that Freddie Mac was entitled to possession? No, Your Honor. That was in this case. Freddie Mac filed this case to get a court order that it was entitled to possession. And that's when the Ancrums brought the counterclaim for breach of contract, a host of other wrongful foreclosure kind of claims, and the district court grand summary judgment in Freddie Mac's favor on the ejectment action and assessed damages to that point. Okay. I'd like to talk a little bit about what the Ancrums argue on appeal for their breach of contract claim. And my understanding of their argument is that they're claiming that because Wells Fargo sent the notice of default to Alabaster, instead of Malene, they breached the mortgage and the summary judgment was inappropriate. As an initial matter, Malene is an unincorporated town in the city of Alabaster, and both addresses, 552 North Grandview Trail, Malene, and 552 North Grandview Trail, Alabaster, are for the same property. And this is confirmed, well, the record is replete with evidence that this is the case. Mr. Ancrum testified in his deposition. They lived in the same property from the closing of the loan until the foreclosure, shortly after foreclosure. He, as this court mentioned, on the telephone, two separate recorded telephone conversations, Mr. Ancrum said that the property address and the mailing address were in Malene. He attached letters to his counterclaim in this case that were addressed to Malene. He produced bank statements in discovery in this case that were addressed to Malene. And as the court mentioned, he executed documents at closing with the Malene address. What the Ancrums, they hinge on the Turner case and they say Wells Fargo did not strictly comply, but the Ancrums are taking a hyper-technical view of strict compliance. And they want it to say, you must strictly comply to every single term of the mortgage. Well, that's just impractical. I mean, I do think Jackson and Turner make it pretty clear that's what you have to do. I just, you know, it seems to me like perhaps the first breach of the terms of the contract may have occurred by the Ancrums. That's right, Your Honor. They did not promptly notify us if there was a change in the address. But I also think this court can distinguish Turner and Jackson because those cases concerned with the contents of the notes of default. And the issue was, did this notice accurately tell the borrowers of their rights? Here, there's no challenge to the contents of the notice. Right, but isn't the reasoning behind those that in a non-judicial foreclosure type of situation, the protection for the borrowers is strict compliance with the terms of the notes of the governing documents? Well, I think that's true when it comes to paragraph 22 and informing the borrowers of their rights. But if you look at the Turner case, cites a Massachusetts case called Pinty. And Pinty also was concerned with the contents of the notes, but it made clear that strict compliance does not require punctilious performance of every single mortgage term. I see my time's up. But requiring such punctilious requirement would be impractical. If the mortgage said the property address is 123 Main Street, but the notice was sent to 123 Main ST, under that hyper-technical view, the notice would be defective. And isn't this an unusual case in the sense that it's not really a change of address? It's two different addresses for the same property? Yes, Your Honor. And it's just like Atlanta and Buckhead or Gwinnett or other neighborhoods or unincorporated cities within towns. Thank you. Thank you. Mr. Taffer. I'd like to clarify that the testimony at the damage hearing, there were three witnesses, the Adams and Mr. Allen, who was Wells Fargo and Freddie Mac's agent. There were two notices. The first one said, get out in 10 days or, in effect, you lose your right to redeem. I mean, that's what the Ancrums understood that to be. The Ancrums wanted to redeem so that everything that they could fit in that Mayflower or whatever the name of the moving company truck, they put in there and left. I might add Mr. Ancrum was a retired police officer at this time. But what stands out and stood out to me at that time with Mr. Ancrum's testimony was that I had to leave my riding lawn mower. To him that, don't get me wrong, everything is important, but I had to leave my riding lawn mower because it wouldn't fit on the truck. But we're not going to mess around and lose our right to redeem. That's what happened here. Mr. Ancrum never went back up there to that property because he did not want to lose his right to redeem. So that when the second notice was posted by Mr. Allen and Mr. Allen's, that's was, hey, you all have abandoned. Abandoned was the word in the notice. You got 15 days to come and get it. There's no testimony that the Ancrums ever saw that. In fact, the testimony was when that moving truck pulled out from up there at the address in Alabaster, neither one of them have been back. Even after the court told them you can go and get your lawn mower, and they just didn't go back. They were really concerned about losing their right to redeem. Now, and as a consequence, we talked about notices and we talked about substantial performance and all of that. And I heard the lawyers for Farrar and Mack say, well, it's too difficult for us to do all the things required by this contract, but we want to hold the Ancrums to every term and condition of the contracts when it comes to payment and default and those kind of things. It's too hard for us to do that. We're a big national company. It's too hard for us to do that. In Alabama, according to the Alabama Supreme Court, they say it's not too hard for you to send two letters when you're taking somebody's house, or in this case, it's a home because they raised three children over there. So then Alabama law says that it's not too hard for you to do this. Let's move to the damages portion of this. The district judge erred in damages. There was no basis for it, no testimony, no evidence at all to say that the Ancrums held over. In fact, all of the testimony, even Freddie Mack's testimony was that they left. Now, I don't know all of this, but I was there to hear it, and Mr. Allen stated that he would go by the weekly to look at the property. I don't recall him saying anything about anybody going up there on the thing. I could be wrong, but I know the Ancrums did not go back to their property, have not been back to their property since that time. That lawnmower and those uniforms and whatever else was there, they abandoned. And I'm not saying they abandoned it. But why is the district court's finding clearly erroneous? Because all the testimony indicated that the Ancrums were out. They had vacated the premises within three days of the first notice. The first notice is what the Ancrums were concerned about. You leave in 10 days. In Alabama, if you don't leave in 10 days, then you lose your right to redeem. The Ancrums were full force in terms of we're going to redeem this. You know, we missed a payment or two, but we're going to redeem our property. We've been here however many years it was. Now, once they did that, they didn't look back. They started doing everything they could to get themselves in position to redeem their property. Some of that included a bankruptcy petition to try to save off everything so they can do things to get that. During the bankruptcy part of this case, we filed an AP, adversary proceeding. It appears that they want to hold us responsible for exercising our rights under the law to file a bankruptcy petition and, more importantly, the adversary proceeding. Thus, the $104,000 in rent and all of that, that's just my opinion. That's not nobody else's opinion. Thank you, Mr. Tucker. I think we have your argument. Thank you, ma'am. All right, next we have Patel v. City of Madison.